(No. 48509.■■■■■■■■■)

JOYCE E. SWEET, Appellee, v. THE DEPARTMENT OF PUBLIC AID *et al.*, Appellants.

*Opinion filed March 23, 1977.*

William J. Scott, Attorney General, of Chicago (Paul V. Esposito and Donald Townsend, Assistant Attorneys General, of counsel), for appellants.

Whitney D. Hardy, Land of Lincoln Legal Assistance Foundation, Inc., of Danville, for appellee.

MR. JUSTICE UNDERWOOD delivered the opinion of the court:

Plaintiff, Joyce E. Sweet, filed a claim with the Illinois Department of Public Aid for medical assistance under the State's "Aid to Families With Dependent Children Related" program (Ill. Rev. Stat. 1975, ch. 23, par. 4–1 *et seq.*). Her claim was denied on the grounds that she was ineligible for medical assistance since her husband had full-time employment and her children were therefore not "dependent" within the meaning of section 4–1.3 of the Public Aid Code and regulations thereunder (Ill. Rev. Stat. 1975, ch. 23, par. 4–1.3). On administrative review, the circuit court of Vermilion County reversed the Department's decision and held that section 4–1.3 of the Code and all regulations promulgated by the Department pursuant thereto were invalid and unenforceable since they violated 42 U.S.C. sec. 602(a)(8)(A)(ii). The court also entered a monetary judgment in the sum of $1,662.55 against the Department and held that plaintiff was entitled to medical assistance and AFDC benefits in the future. The Department appeals directly to this court pursuant to Supreme Court Rule 302(a)(1). 58 Ill. 2d R. 302(a)(1).

This case is concerned with two interrelated Federal assistance programs in which the State of Illinois has elected to participate—the Aid to Families With Dependent Children (AFDC) and Medical Assistance (Medicaid) programs. Title IV of the Social Security Act of 1935 as amended (42 U.S.C. sec. 601 *et seq.* (1970)) authorizes

financial assistance grants to participating States for the purpose of aiding needy dependent children who have been deprived of parental support or care for reasons specified in the Act. The broad purpose of the Federal program is to encourage "the care of dependent children in their own homes or in the homes of relatives by enabling each State to furnish financial assistance and rehabilitation and other services, as far as practicable under the conditions in such State, to needy dependent children and the parents or relatives with whom they are living to help maintain and strengthen family life and to help such parents or relatives to attain or retain capability for the maximum self-support and personal independence consistent with the maintenance of continuing parental care and protection ***." 42 U.S.C. sec. 601 (1970).

"Need" and "dependency" are prerequisites for AFDC eligibility. With respect to need, the Federal statute provides in relevant part that a State plan must:

> "(7) except as may be otherwise provided in clause (8), provide that the State agency shall, in determining need, take into consideration any other income and resources of any child or relative claiming aid to families with dependent children, or of any other individual (living in the same home as such child and relative) whose needs the State determines should be considered in determining the need of the child or relative claiming such aid, as well as any expenses reasonably attributable to the earning of any such income; (8) provide that, in making the determination under clause (7), the State agency—
>
> (A) shall with respect to any month disregard—
> * * *
>
> (ii) in the case of earned income of a dependent child not included under clause (i), a relative receiving such aid, and any other individual (living in the same home as such relative and child) whose needs are taken into account in making such determination, the first $30 of the total of such earned income for such month plus one-third of the remainder of such income for such month ***." (42 U.S.C. secs. 602(a)(7), (a)(8)(A)(ii) (1970).)

It is well established that the individual States are given broad discretion within the foregoing guidelines to set their own standards of need as well as the level of benefits to be paid under State-administered programs. *Burns v. Alcala* (1975), 420 U.S. 575, 43 L. Ed. 2d 469, 95 S. Ct. 1180; *Dandridge v. Williams* (1970), 397 U.S. 471, 25 L. Ed. 2d 491, 90 S. Ct. 1153; *Rosado v. Wyman* (1970), 397 U.S. 397, 25 L. Ed. 2d 442, 90 S. Ct. 1207; *King v. Smith* (1968), 392 U.S. 309, 20 L. Ed. 2d 1118, 88 S. Ct. 2128.

In contrast to the authority which Congress has delegated to the States to determine which families and children are "needy," the Federal act defines which children are "dependent" for purposes of AFDC eligibility. 42 U.S.C. sec. 606(a) provides as follows:

> "(a) The term 'dependent child' means a needy child (1) who has been deprived of parental support or care by reason of the death, continued absence from the home, or physical or mental incapacity of a parent, and who is living with his father, mother, grandfather, grandmother, brother, sister, stepfather, stepmother, stepbrother, stepsister, uncle, aunt, first cousin, nephew, or niece, in a place of residence maintained by one or more of such relatives as his or their own home, and (2) who is (A) under the age of eighteen, or (B) under the age of twenty-one and (as determined by the State in accordance with standards prescribed by the Secretary) a student regularly attending a school, college, or university, or regularly attending a course of vocational or technical training designed to fit him for gainful employment." 42 U.S.C. sec. 606(a) (1970).

In 1961 Congress added 42 U.S.C. sec. 607 to the Social Security Act, which broadened the definition of "dependent child" to include children deprived of parental support or care by reason of the unemployment of a parent. That section originally authorized the States to define what constituted "unemployment." However, in 1968, section 607 was amended to remove such authority from the States. That section now provides:

"(a) The term 'dependent child' shall, notwithstanding section 606(a) of this title, include a needy child who meets the requirements of section 606(a)(2) of this title who has been deprived of parental support or care by reason of the unemployment (as determined in accordance with standards prescribed by the Secretary) of his father, and who is living with any of the relatives specified in section 606(a)(1) of this title in a place of residence maintained by one or more of such relatives as his (or their) own home." (42 U.S.C. sec. 607(a) (1970).)

Pursuant to the authority granted in section 607(a), the Secretary of Health, Education and Welfare has promulgated regulations which provide that the definition of an unemployed father within any State-administered AFDC plan must include any father who is employed less than 100 hours a month. 45 C.F.R. sec. 233.100(a)(1)(i) (1976).

The Illinois plan for aid to families with dependent children is codified in article IV of the Public Aid Code. (Ill. Rev. Stat. 1975, ch. 23, pars. 4—1 through 4—11.) Section 4—1 provides in pertinent part that "[f]inancial aid in meeting basic maintenance requirements for a livelihood compatible with health and well-being shall be given under this Article to or in behalf of families with dependent children who meet the eligibility conditions of Sections 4—1.1 through 4—1.10." (Ill. Rev. Stat. 1975, ch. 23, par. 4—1.) Section 4—1.6 provides as follows with respect to the question of need:

"Income available to the family, or to the child in the case of a child removed from his home, when added to contributions in money, substance or services from other sources, including income available from parents absent from the home or from a stepparent, contributions made for the benefit of the mother or other persons necessary to provide care and supervision to the child, and contributions from legally responsible relatives, must be insufficient to meet the basic maintenance needs of the family or the child, as the case may be, as defined by standards established by the Illinois Department.

In considering income to be taken into account,

consideration shall be given to any expenses reasonably attributable to the earning of such income. The Illinois Department may also, subject to such limitations as may be prescribed by federal law or regulation, permit all or any portion of earned or other income to be set aside for the future identifiable needs of a child. If federal law or regulations permit or require exemption of other income of recipients, the Illinois Department may provide by rule and regulation for the exemptions thus permitted or required." (Ill. Rev. Stat. 1975, ch. 23, par. 4—1.6.)

Consistent with the requirements of 42 U.S.C. sec. 602(a)(8)(A)(ii) quoted earlier, the Illinois Department of Revenue has adopted regulations providing that the first $30 of a family member's gross earned income plus one-third of the remainder is exempt from consideration when determining eligibility for AFDC assistance.

The provisions of the Illinois Public Aid Code defining causes of dependency also closely parallel the Federal statute. Section 4—1.3 of the Code provides:

"The child or children must have been deprived, in whole or in part, of the support or care necessary to provide a standard of living compatible with health and well-being because of the death, continued absence from the home, physical or mental incapacity, or the unemployment, total or partial, of the parent or parents. 'Parent' or 'parents' means the natural, adoptive, or step-parent or parents of the child." (Ill. Rev. Stat. 1975, ch. 23, par. 4—1.3.)

The Department of Public Aid has adopted a rule following the minimum standards established by Federal regulation that a father will be considered unemployed if he works less than 100 hours a month.

We believe it is evident that the foregoing provisions of the Illinois Public Aid Code and the above-referred-to rules adopted thereunder are consistent with the corresponding Federal statutes and regulations with respect to the determination of what children and families are to be considered "needy" and what children are to be considered "dependent" for purposes of AFDC eligibility.

In 1965 Congress enacted the so-called "Medicaid" program by the addition of title XIX to the Social Security Act of 1935 (42 U.S.C. sec. 1396 *et seq.* (1970)). States which choose to participate in the Medicaid program are entitled to Federal grants for medical assistance programs if certain requirements are met. One of the requirements is that medical assistance must be made available to all individuals who are receiving aid or assistance under AFDC or one of the other approved "categorical assistance" programs, *i.e.,* aid to the aged, blind or disabled. (42 U.S.C. sec. 1396a(a)(10)(A) (1970).) Under title XIII the States are also given the option of providing medical assistance to other persons who are in need of such assistance but are not eligible for AFDC or one of the other categorical assistance programs on account of their failure to meet the income and resources requirements of the appropriate State plans. 42 U.S.C. sec. 1396a(a) (10)(C) (Supp. 1974).

Illinois has chosen to participate in both the mandatory and optional phases of the Medicaid program. The broad purpose of the Illinois plan, which is codified in article V of the Public Aid Code (Ill. Rev. Stat. 1975, ch. 23, pars. 5—1 through 5—13), is "to provide a program of essential medical care and rehabilitative services for persons receiving basic maintenance grants under this Code and for other persons who are unable, because of inadequate resources, to meet their essential medical needs." (Ill. Rev. Stat. 1975, ch. 23, par. 5—1.) Section 5—2 defines the classes of persons eligible for medical assistance in pertinent part as follows:

> "Medical assistance under this Article shall be available to any of the following classes of persons in respect to whom a plan for coverage has been submitted to the Governor by the Illinois Department and approved by him:
>
> 1. Recipients of basic maintenance grants under Articles III and IV.

2. Persons otherwise eligible for basic maintenance under Articles III and IV but who fail to qualify thereunder on the basis of need, and who have insufficient income and resources to meet the costs of necessary medical care." (Ill. Rev. Stat. 1975, ch. 23, par. 5—2.)

Article III of the Public Aid Code, which is referred to in the above-quoted sections of section 5—2, is concerned with aid to the aged, blind and disabled and is not pertinent here. As previously discussed, article IV establishes the Illinois AFDC plan. We should also note that section 5—2 lists two other categories of persons who may be eligible for medical assistance. However, those provisions are not relevant here in view of the fact that plans of coverage for such persons were not in effect at the time plaintiff filed her claim for medical assistance in this case. The Illinois plan for medical assistance under section 5—2(2) to persons otherwise eligible for AFDC but who have failed to qualify therefor on the basis of need is called the "Medical Assistance No Grant" (MANG) program and is also referred to as the "Medical Assistance under the Aid to Families with Dependent Children Related" program.

On November 7, 1974, plaintiff filed an application with the Vermilion County Department of Public Aid requesting medical assistance under the MANG program on the basis of disability and the dependency of her children. The application was denied on the ground that her husband was employed full time. Plaintiff filed notice of appeal, and a hearing was subsequently held before the Illinois Department of Public Aid. Plaintiff testified at the hearing regarding various medical expenses incurred by her family and the financial hardship which the family was experiencing in payment of rent and other family expenses. The testimony also established that plaintiff's husband was employed as a baker's helper and worked approximately 50 hours per week at an hourly rate of $1.80. We note that although plaintiff had requested

medical assistance on the ground of both disability and child dependency, there was no testimony regarding the matter of disability.

The hearing officer made findings of fact that plaintiff resided with her husband and three minor children; that since July 1974 she had been receiving medical assistance under the "Aid to Families With Dependent Children Unemployed Related" program and that the family's only other regular source of income was from her husband's employment; that plaintiff's husband worked 8½ hours per day, 6 days per week as a baker's helper earning $1.80 per hour in full-time employment; and that the medical expenses for plaintiff and her family for the pertinent 6-month period were approximately $1,400. The Department subsequently entered its final administrative decision approving and confirming the hearing officer's findings of fact and affirming the county department's denial of medical assistance. In its decision, the Department relied on the statutory definition of causes of dependency found in section 4—1.3 of the Public Aid Code quoted above in support of its conclusion that since plaintiff's husband was employed full time, there were no "dependent" children in her home within the purview of the statute, for which reason she was ineligible for medical assistance under the MANG program.

Plaintiff's complaint for administrative review filed in the circuit court of Vermilion County included allegations that plaintiff had a right to receive funds from the MANG program in an amount sufficient to meet all the medical needs of the family unit and that any policy or regulation of the Illinois Department of Public Aid to the contrary violated plaintiff's rights under the State and Federal constitutions and statutes. Plaintiff prayed that section 4—1.3 of the Public Aid Code and certain of the Department's rules and regulations be declared illegal and unconstitutional. Plaintiff also requested that the trial

court reverse the Department's decision and declare plaintiff eligible to receive retroactive MANG benefits. The trial court subsequently entered an order holding that section 4—1.3 of the Public Aid Code and all regulations of the Department of Public Aid promulgated pursuant thereto were inconsistent with and in violation of 42 U.S.C. sec. 602(a)(8)(A)(ii) and were accordingly unenforceable; that the court had jurisdiction to assess money damages under the Administrative Review Act; that the Court of Claims was not the appropriate forum to resolve such questions; and that plaintiff was entitled not only to medical assistance under the MANG program, but was also eligible for AFDC benefits. The court ordered:

> "[t]hat Judgment shall be and hereby is entered in behalf of the Plaintiff, Joyce E. Sweet, and against the Defendants in the sum of $1,662.55 to be granted to the Plaintiff as prospective relief by increasing any and all future monthly assistance grants by the sum of $100.00 each month beginning December, 1975, and for each month thereafter through January, 1977, until the total amount of money is paid to the Plaintiff; such additional amount shall be considered exempt income and totally disregarded in regard to the determination of eligibility for AFDC, AABD, Medical Assistance, Food Stamps, or any other program administered or funded by the Defendants."

The trial court denied the Department's motion to vacate the order but stayed its enforcement pending the Department's direct appeal to this court.

Plaintiff argues that section 4—1.3 of the Public Aid Code creating "unemployment" as a cause of dependency and the Department's rule defining unemployment in terms of the number of hours worked per month are inconsistent with the congressional intent to provide assistance to needy children as expressed in 42 U.S.C. sec. 602(a)(8)(A)(ii). In particular, she argues that the 100-hour rule found in both the State and Federal regulations destroys the entire purpose of the welfare program and

tends to encourage financially distressed parents who are unable to secure better jobs to either quit their jobs, work less than 100 hours, or desert their families. She further contends that such an arbitrary classification denies her family equal protection and due process of law under the State and Federal constitutions. Although the trial court submitted no written findings in support of its order, the court apparently concurred with these contentions, which were also advanced by plaintiff in that court.

In our opinion, plaintiff's arguments with respect to congressional intent fail to recognize the distinction between the concepts of need and dependency for purposes of the State and Federal statutes here in question. Both statutes contemplate that need is to be determined on the basis of income and resources, while dependency is concerned with the reasons that a child is deprived of parental support or care. We are unable to concur with the suggestion that a definition of dependency which does not take income into account is inconsistent with congressional intent. It is not the purpose of the AFDC program to provide assistance to all needy children, but rather to those who are not only needy as determined under State standards, but who also meet the Federal definition of a "dependent child"—namely, a needy child who has been deprived of parental support or care by reason of either the death, continued absence from the home, physical or mental incapacity of the parent or unemployment of the father as determined in accordance with the standards prescribed by the Secretary of Health, Education and Welfare. Unless a child qualifies as a "dependent child," he is not entitled to AFDC benefits irrespective of the question of need.

Substantially the same questions were raised in *Macias v. Finch* (N.D. Cal. 1970), 324 F. Supp. 1252, *aff'd sub. nom. Macias v. Richardson* (1970), 400 U.S. 913, 27 L. Ed. 2d 153, 91 S. Ct. 180, which was concerned with the validity of the forerunner of the present regulation

establishing the 100-hour-per-month criteria for determining whether a father is unemployed for purposes of AFDC eligibility. In 1969, the Secretary of HEW promulgated a regulation pursuant to 42 U.S.C. sec. 607(a) providing that any State-administered AFDC plan must include within the definition of an unemployed father any father who is employed less than 30 hours a week and may include any father who is employed less than 35 hours a week. The three-judge court upheld the regulation against the contention that a family was denied assistance on the basis of an arbitrary number of hours worked rather than because of need or income. The court reviewed the history of the legislation and concluded as follows with respect to congressional intent: "Plaintiffs' contention that 'unemployment' must take into account the amount earned by the father and the need of the family as well as hours worked conflicts with the 1968 amendments and their legislative history as well as with common parlance and prior state practice. Congress intended to authorize prescription of a uniform standard which found the middle ground between the outer limits of the then-existing state programs. *** The Secretary's regulation complies with this congressional intent and accordingly is within the scope of Section 607." 324 F. Supp. 1252, 1257.

In this case there is no dispute over the fact that the income and resources of plaintiff's family were below the State's standard of need. We are in complete agreement with plaintiff that it seems somewhat unfair and inequitable to deny her family medical assistance benefits on account of the fact that her husband worked more than 100 hours a month at low wages in an attempt to earn a living for his family whereas a family in which the father was unemployed or worked fewer than 100 hours a month at a higher salary might be eligible for such benefits. *Macias* and other Federal decisions also recognize that the determination of "unemployment" based upon the number of hours may result in anomalous situations in which

those who work may be denied assistance even though their income is less than the amount that nonworking recipients receive under AFDC. However, these decisions nevertheless hold that the fact that Congress has not seen fit to make children of the "underemployed" eligible for AFDC does not deprive those persons of equal protection of the law. (*Cloud v. Dietz* (E.D. Ky. 1971), 342 F. Supp. 1146; *Cheley v. Burson* (N.D. Ga. 1971), 324 F. Supp. 678, *appeal dismissed sub. nom. Cheley v. Parham* (1971), 404 U.S. 878, 30 L. Ed. 2d 159, 92 S. Ct. 219; see also *Dimery v. Department of Social Services* (S.D. Iowa 1972), 344 F. Supp. 1181; *Fullington v. Shea* (D. Colo. 1970), 320 F. Supp. 500, *aff'd* (1971), 404 U.S. 963, 30 L. Ed. 2d 282, 92 S. Ct. 345; *Hart v. Juras* (1974), 17 Ore. App. 566, 522 P.2d 1399.) The United States Supreme Court has also recently held that the fact that welfare programs may apply somewhat unfairly in given situations does not necessarily involve a denial of equal protection or due process of law. (*Knebel v. Hein* (1977), 429 U.S. 288, 50 L. Ed. 2d 485, 97 S. Ct. 549.) Likewise, in *Dandridge v. Williams* (1970), 397 U.S. 471, 487, 25 L. Ed. 2d 491, 503, 90 S. Ct. 1153, 1162-63, the court made the following observation in upholding a Maryland administrative regulation which imposed a maximum limit on the total amount of AFDC assistance which any one family unit could receive:

> "We do not decide today that the Maryland regulation is wise, that it best fulfills the relevant social and economic objectives that Maryland might ideally espouse, or that a more just and humane system could not be devised. Conflicting claims of morality and intelligence are raised by opponents and proponents of almost every measure, certainly including the one before us. But the intractable economic, social, and even philosophical problems presented by public welfare assistance programs are not the business of this Court. The Constitution may impose certain procedural

safeguards upon systems of welfare administration, *Goldberg v. Kelly* [(1970), 397 U.S. 254, 25 L. Ed. 2d 287, 90 S. Ct. 1011]. But the Constitution does not empower this Court to second-guess state officials charged with the difficult responsibility of allocating limited public welfare funds among the myriad of potential recipients. [Citations.]"

The apparent unfairness of the situation in the case now before us results in large degree from the fact that plaintiff's husband was employed at a very low wage rate. In our opinion, it was not a constitutional requirement that the AFDC and medical assistance programs be structured in such a manner as to remedy the problem of inadequate wages in addition to the stated goals of those programs. The Supreme Court stated in *Williamson v. Lee Optical of Oklahoma, Inc.* (1955), 348 U.S. 483, 489, 99 L. Ed. 563, 573, 75 S. Ct. 461, 465:

"Evils in the same field may be of different dimensions and proportions, requiring different remedies. *** Or the reform may take one step at a time, addressing itself to the phase of the problem which seems most acute to the legislative mind. [Citation.] The legislature may select one phase of one field and apply a remedy there, neglecting the others. [Citation.]"

In *McDonald v. Board of Election Commissioners* (1969), 394 U.S. 802, 809, 22 L. Ed. 2d 739, 746, 89 S. Ct. 1404, 1409, the court quoted from *Williamson* and then noted that "a legislature need not run the risk of losing an entire remedial scheme simply because it failed, through inadvertence or otherwise, to cover every evil that might conceivably have been attacked." The court in *Macias* concluded as follows with regard to the fact that the AFDC program did not cover certain families with fathers who worked more than the minimum number of hours at low-paying jobs:

"Here the congressional retention, or crea-

tion, depending upon one's point of view, of this particular lacuna in AFDC coverage may be explained by pointing to congressional efforts to maintain adequate wages for employed people through such devices as minimum wage laws and collective bargaining rights. These and similar efforts on behalf of employed people provide a rational basis for excepting employed fathers from the coverage of section 607. As the circumstances of the Macias and Tàrin families demonstrate, congressional efforts for the employed can fail in some specific cases to come up to general AFDC standards. But *McDonald* and *Williamson* indicate to us the Congress can constitutionally approach a problem in two different directions, even though its action produces inequality at the interface of the two efforts. The challenged statutes and regulations are constitutional." 324 F. Supp. 1252, 1260-61.

For the reasons stated above, we hold that the trial court erred in determining that section 4—1.3 of the Public Aid Code and regulations thereunder are inconsistent with or violate 42 U.S.C. sec. 602(a)(8)(A)(ii). The record supports the decision of the Department of Public Aid that the dependency requirement established by State and Federal law and regulations was not met in this case, for which reason plaintiff was ineligible either for AFDC benefits or for medical assistance under the MANG program. Since the judgment of the trial court must therefore be reversed, we do not reach the other questions raised on this appeal by the Department as to whether the trial court had jurisdiction to enter a monetary judgment and whether the trial court erred in not making findings of fact or stating the basis of law on which its judgment was based.

Accordingly, the judgment of the circuit court of Vermilion County is reversed, and the cause is remanded

to that court with directions to enter an order affirming the decision of the Illinois Department of Public Aid and for such further proceedings consistent herewith as may be appropriate.

*Reversed and remanded,*
*with directions.*