[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff, the State of Connecticut, on behalf of Maria CT Page 2281 Montero, has brought a petition for a support order pursuant to Sections 17-324 and 46b-215 of the General Statutes against the respondent, Sherel Rosolillo.
In its petition, the State, acting through the designated representative of the Commissioner of Human Resources, alleges, it is providing public assistance under the Aid to Families with Dependent Children Program on behalf of the defendant's minor child, Nancy Vargas, who was born September 9, 1983. A monthly amount of assistance is being paid to Maria Montero, who is alleged to be the child's "custodial relative" in the petition.
The State also alleges that the defendant is a legally liable relative and requests payments of weekly support, including any past due amounts, as the court shall find reasonably commensurate with the financial ability of the defendant. It further requests that any payments be directed to the State of Connecticut or the custodial relative (emphasis added) as their interests may appear. Orders for an immediate wage withholding and health insurance coverage for the child are also sought.
Several days of hearings were held in this matter, commencing on March 16, 1990 and ending on July 27, 1990. Both parties were represented by counsel. Maria Montero never appeared personally.
It should be noted here that on March 16, 1990, although the State made a claim for an arrearage, the respondent, who was then unrepresented, but accompanied by her father, raised an objection to the petition's being granted. The matter was continued to April 6, 1990, to allow her time to obtain an attorney. For some reason, the clerk's notes indicate a "finding" of an arrearage owed on that date. It was never this court's intention to enter any such finding in light of the defendant's request for time to obtain an attorney. Counsel for both parties have been consulted with respect to this March 16 "finding", and both agree that no such order should have been entered. The notation of such a finding is an error and is accordingly vacated.
At the hearing conducted on April 27, 1990, the respondent testified that the father of the child, Felix Vargas, was granted legal custody by a juvenile court on November 16, 1983. No orders of support were ever issued against the respondent. For some time, Mr. Vargas and the child lived with Maria Montero and her four other children, at least some of whom were fathered by Felix Vargas. Since the couple were never married, Maria Montero is not Nancy's legal stepmother, not is she related to Nancy in any other way. She also does not have legal custody or guardianship of the child. CT Page 2282
The present address or whereabouts of Mr. Vargas are uncertain. Since July 7, 1989, the State has been paying Ms. Montero $821.00 per month for the support of her four children and Nancy Vargas. Presently, one-fifth of the monthly grant is considered for Nancy's support, which Mr. Andrew Nisky of the Department of Human Resources testified as equivalent to $37.92 per week. This is a lower figure than the weekly figure alleged in the petition.
The defendant raised several defenses to the support petition, which can be summarized as follows:
(1) Since Maria Montero is in no way related to Nancy Vargas, the award of assistance to Ms. Montero for Nancy is unlawful and the respondent cannot be held liable to reimburse the state for support. Nancy Vargas, the defendant claims, is not a "dependent child" as defined be state law;
(2) The state's failure to inform the defendant of its intent to grant assistance to Ms. Montero on behalf of Nancy prior to paying out the public assistance, coupled with its consequent demand for payment of past due support owed since the commencement of that assistance, is a denial of due process in that it constitutes the deprivation of the defendant's property without prior notice or hearing;
(3) The State must investigate both of Nancy's parents and produce evidence as to the ability of each to pay before it can pursue and enforce a support order against either of them. The State's admitted investigation of only one parent is a violation of the intent of the law which created the child support guidelines and is a denial of equal protection of the law;
(4) Since Maria Montero is not the legal custodian or guardian of Nancy, she has no independent right to secure support from the respondent and is incapable of assigning any right to support to the State, which allegedly affords a basis for this petition; and
(5) The respondent's net income, as evidenced by her testimony and her financial affidavit, is so low and she exists on such a "bare-boned" budget that an application of the child support guidelines in her case would be inequitable and only nominal orders should enter.
Since the court finds that the respondent's first defense relating to the definition of a "dependent child" is dispositive of this case, the other four defenses will not be addressed. CT Page 2283
The program of Aid to Families with Dependent Children, hereinafter referred to as the AFDC program, is in effect in this State by virtue of cooperative federal and state statutes under which aid is administered by the state under specified guidelines, and is financed by the federal government with matching state funds. The federal program was initiated by provisions of the Social Security Act under which appropriation of funds is authorized for payment to states which have an approved plan for aid to needy families with dependent children.42 U.S.C. § 601 et seq.
The federal program is based on a scheme wherein each state establishes and administers its own assistance programs within the broad guidelines established by the federal statute. Those states desiring to participate in the program are required to comply with the conditions imposed by law. The state program must conform with federal law and regulations in order for the state to receive the federal funds. State regulations or policies which conflict with applicable federal statutes and regulations are invalid and unenforceable. (For a general discussion of the AFDC program, see 81 C.J.S., Social Security, Section 114.)
Legislation creating the State of Connecticut's AFDC program is contained in the General Statutes at Section 17-82 et seq. Pertinent provisions of Section 17-82 define "dependent child" as a "needy child under the age of eighteen. . . who has been deprived of parental support or care by reason of the death, continued absence from the home, or physical or mental incapacity of a parent, and who is living with his father, mother, grandfather, grandmother, brother, sister, stepfather, stepmother, stepbrother, stepsister, uncle or aunt, or any other relative approved by the commissioner in a place of residence maintained by one or more of such relatives as his or their own home. (emphasis added).
The above definition conforms to the definition of "dependent child" required by federal law in42 U.S.C. § 606(a).
It is not the purpose of the AFDC program to provide assistance to all needy children, but rather to those who are not only needy as determined under State standards, but who also meet the federal definition of a "dependent child". Sweet v. Dept. of Public Aid, 66 Ill.2d 195, 206, 361 N.E.2d 1118, 1123 (1977); Cannon v. Illinois Department of Public Aid, 395 N.E.2d 732 (1979); Sadler on Behalf of Bailey v. Atkins, 597 F. Sup. 1204
(D.C. Mass., 1984). CT Page 2284
The Connecticut Department of Income Maintenance Uniform Policy Manual Section on Categorical Eligibility Requirements for AFDC, Section 2515.05, specifies permissible degrees of relationship between the child and the caretaker relative with whom he resides. (See attached Exhibit A). This policy is also in conformity with the state and federal definitions of a "dependent child".
The exhibit introduced by the State, (See State's Exhibit B — "AFDC Assistance Unit Requirements") as evidence of a so-called "half-sibling" rule, actually has to do with whose income in a particular household must be taken into account when determining the amount of the family's monthly need. See42 U.S.C.A. Section 602(a)(7). It is not at all relevant to the issue of who is a "dependent child".
This irrelevant provision, unaccompanied by any testimony from a knowledge state official, is all the State offered during the course of the hearing to counter the respondent's special defense.
The State in this case took the position that this court has no right to inquire as to the "why" of the granting of the assistance on behalf of the child.[1]
While the creation of the family support magistrate division was designed to expedite the process of child support collection, it certainly was never intended to create a situation where the magistrate serves as a rubber stamp for whatever claims the State may present. Family support magistrates are not interdepartmental hearing officers for the Department of Human Resources — they are intended to function as impartial, independent members of a division of the superior court in a quasi-judicial manner. C.G.S. Section 46b-231(d).
Remedies provided in the Family Support Magistrate Division are in addition to and not in substitution for any other remedy. C.G.S. Section 46b-231(c).
The petition was brought was brought in the Family Support Magistrate Division by the child support bureau of the State Department of Human Resources, which is the state agency designated to administer the child support enforcement program mandated by Title IV-D of the federal Social Security Act. See C.G.S. Section 17-31i. IV-D support cases of actions for child and spousal support under Title IV-D of the Social Security Act and include cases in which support rights have been assigned to the state in AFDC cases. C.G.S. Section 46b-231(b)(15).
Section 17-31i (b) states that the Commissioner of Human CT Page 2285 Resources shall, in the manner provided in section 17-82e, investigate the financial condition of the parent or parents of: (1) any child applying for or receiving assistance under the provisions of part II of Chapter 302, which is the statute creating the AFDC program in accordance with Title IV-A of the Social Security Act.
Title IV-A provides funds from the public treasure to support children in need who are dependent children as defined by 42 U.S.C. § 606a. Title IV-D seeks to recover those funds and restore the treasury balance by enforcement of support obligations owed by the absent parents of these children. In enacting Title IV-D, Congress was primarily concerned with collecting child support in order to reduce the welfare rolls. Wehunt v. Ledbetter, 875 F.2d 1558, 1565 (11th Cir. 1989).
The two sections are inextricably related. The determination of the commissioner as to the liability of the respondent and her ability to pay in accordance with 17-82e necessarily involves a determination that Nancy was eligible for aid and was entitled to receive it in amount granted. State v. Griffiths, 152 Conn. 48, 56 (1964). The person for whom support is being sought must be one who would be entitled to receive it from the responsible public authority. Tulin v. Tulin,124 Conn. 518, 522 (1938).
The State alleges in its petition that it is an interested party in this action because it is providing or has provided public assistance under the Aid to Families with Dependent Children Program. "Under" in the context of this allegation means "according to". Black's Law Dictionary 1695 (4th ed. 1968). The respondent has a right to challenge the truth of the allegation. Moreover, if a challenge to the recipient petitioner's eligibility unveils an unauthorized and improper grant of public assistance, the congressional intent to reduce the welfare rolls is still accomplished.
To take the position that the court can never inquire into the eligibility of the petitioner would create a rather harsh result when the recipient has been perpetrating a fraud on the system. For example, respondents have occasionally appeared in court with the very child for whom support is being sought and have indicated that they have had custody of the child and been his sole source of support during the time the petitioner has been receiving assistance on behalf of the child. The State usually declines to pursue their petition for support in such cases.
In reaching this decision, this Court is by no means unmindful of the fact that there remains a seven-year-old child CT Page 2286 in the care of a non-relative who is not her legal custodian. How she is to be enrolled in school or afforded necessary medical treatment in an emergency is worrisome.
Until this case was filed, the respondent believed the child's natural father and legal custodian was still living with and caring for her. Now the respondent doesn't even know where Maria Montero is keeping her child, since the family has apparently moved and the State is not authorized to disclose the child's whereabouts without Ms. Montero's consent.
However, the problem is not without solutions which, in the long run, will better serve the best interests of the child than the maintenance of the status quo.
With the assistance of any adult relative of Nancy's Ms. Montero could seek guardianship of the child, and as her legal guardian, could seek support in her own right on behalf of Nancy. Mills v. Theriault, 40 Conn. Sup. 349 (1985). See C.G.S. Section 45-43a et seq.
The State Departments of Children and Youth Services or Human Resources could assist Ms. Montero in becoming the designated foster parent of the child if it is in Nancy's best interest to allow her to stay with the petitioner. See C.G.S. Section 46b-129 et seq.
Perhaps Mr. Vargas, Ms. Rosolillo or another family member will consider assuming custody and care of child.
The State may even be able to still recoup the ADFC assistance paid in accordance with either C.G.S. Section 17-83, (See Thibeault v. White, 168 Conn. 112 (1975); Cross v. Wilson,35 Conn. Sup. 628 (1978); Pare v. Cancel, 2 S.M.D. 111 (1988)), or 17-82m and 17-82n, which allow for recovery of overpayments from public assistance recipients.
There is also authority under the common law that a third party who provides support for a parent's child may recover the cost from parent under a theory of quasi-contract or tort. Saask v. Yandell, 702 P.2d 1327, 1330 (Alaska, 1985); 67A CJS Parent Child, Section 66 (1955); Wintrode v. Conners,35 N.E.2d 1018, 67 Ohio App. 106 (1941).
However, none of the above causes of action for the State's collection of its alleged debt were advanced in this case. On the basis of what was alleged, the state has failed to prove its allegation that assistance was granted in accordance with state law to a custodial relative. CT Page 2287
Although Nancy Vargas is admittedly a child in need, she does not meet the definition of a dependent child as set forth in C.G.S. Section 17-82. Although she lives with half-siblings, maintaining the place of residence in which Nancy resides. The person maintaining that residence, Maria Montero, is not related to Nancy at all. Since, pursuant to Section 17-31i, the State is only entitled to pursue support under the Title IV-D program when assistance is granted under the provisions of state law, the petition is denied. Judgment may enter in favor of the respondent, Sherel Rosolillo.
Christine E. Keller Family Support Magistrate
Exhibit A
CONNECTICUT DEPARTMENT OF INCOME MAINTENANCE UNIFORM POLICY MANUAL
Date: 7-1-87 Transmittal: UP-87-2 2515 ---------------------------------------------------------------------- Section: Categorical Eligibility Requirements Type: POLICY ---------------------------------------------------------------------- Chapter: Living With Specified Relative Program: AFDC ---------------------------------------------------------------------- Subject: ---------------------------------------------------------------------- 2515
 In this chapter the requirements regarding living with a specified relative are described in detail. Among the issues covered include:
 The degree of relationship a child must have to a relative in order to qualify for AFDC;
 The conditions under which a child is considered to be meeting the "living with specified relative" requirements;
 The circumstances under which the "living with specified relative" requirements continue to be met even when the child or caretaker relative is temporarily absent from the home.
CONNECTICUT DEPARTMENT OF INCOME MAINTENANCE UNIFORM POLICY MANUAL CT Page 2288
Date: 7-1-87 Transmittal: UP-87-2 2515.05 ---------------------------------------------------------------------- Section: Categorical Eligibility Requirements Type: POLICY ---------------------------------------------------------------------- Chapter: Living With Specified Relative Program: AFDC ---------------------------------------------------------------------- Subject: Degree of Relationship ---------------------------------------------------------------------- 2515.05
 A. The child is considered to be living with a relative who is within a specified degree relationship if such child is living with an individual who meets the degree of relationship listed in one of the following groups:
 1. Blood relatives, including those of half-blood, and persons of preceding generations as denoted by prefixes of grand, great, or great-great:
 father uncle mother aunt grandfather immediate first cousins grandmother nephew brother niece sister half-brother great uncle. half-sister great-aunt half-brother of father great grandfather or mother (Equiv. to uncle) great grandmother great-great grandfather half-sister of father great-great grandmother or mother (Equiv. to aunt) great-great uncle great-great aunt
 2. Stepfather, stepmother, stepbrother, and stepsister regardless of marital status.
 3. Relatives whose relationship to the dependent child is based on legal adoption: adoptive father adoptive mother father of adoptive parent (equivalent to grandfather) mother of adoptive parent (equivalent to grandmother) child of adoptive parent (equivalent to brother or sister) other relatives as listed, in the paragraphs above.
 4. Spouses of any individuals named in the above groups even after the marriage is terminated by death or divorce.
5. Blood relatives listed above are still considered to be an CT Page 2289 acceptable degree of relationship even when the child is subsequently adopted.
CONNECTICUT DEPARTMENT OF INCOME MAINTENANCE UNIFORM POLICY MANUAL
Date: 7-1-87 Transmittal: UP-87-2 2515.10 --------------------------------------------------------------------- Section: Categorical Eligibility Requirements Type: POLICY --------------------------------------------------------------------- Chapter: Living With Specified Relative Program: AFDC --------------------------------------------------------------------- Subject: Continuous Care and Supervision --------------------------------------------------------------------- 2515.10
 A. The child is considered to be meeting the requirement of living with the caretaker relative, providing these conditions are met:
 1. the caretaker relative is exercising responsibility for the continuous care and supervision of the child, even though the child or caretaker relative may be temporarily absent from the home; and
 2. if the child or caretaker relative is absent from the customary family setting, such absence does not exceed 90 consecutive days.
 B. The child is not considered to be meeting the requirement of living with the caretaker relative if the absence does exceed ninety (90) consecutive days, regardless of whether or not the caretaker relative is exercising responsibility for the continuous care and supervision of the child.
CONNECTICUT DEPARTMENT OF INCOME MAINTENANCE UNIFORM POLICY MANUAL
Date: 7-1-87 Transmittal: UP-87-2 2515.20 ---------------------------------------------------------------------- Section: Categorical Eligibility Requirements Type: POLICY ---------------------------------------------------------------------- Chapter: Living With Specified Relative Program: AFDC ---------------------------------------------------------------------- Subject: Absence of Child from the Home ---------------------------------------------------------------------- 2515.20
A. Child Considered to be Living With The Caretaker Relative
1. Temporary Absence From the Home CT Page 2290
 The child is considered to be living with the caretaker relative in situations in which the child is absent from the home because of:
 a. attendance at a specialized educational program on a "live-in" basis for part of each week such as those programs provided by the American School for the Deaf, the Day Hill School for the Blind, or the regional center for the mentally retarded; or
 b. hospitalization in a general hospital for a period of less than 90 consecutive days.
2. Temporary Return to the Home for 30 Days or More
 a. The child is considered to be living with the caretaker relative in cases in which the child returns to the home from an institution which has primary responsibility for the care of the child for a visit of thirty (30) consecutive days or more.
 b. The child is considered to be living with the caretaker relative only for the duration of the visit.
CONNECTICUT DEPARTMENT OF INCOME MAINTENANCE UNIFORM POLICY MANUAL
Date: 7-1-87 Transmittal: UP-87-2 2515.25 --------------------------------------------------------------------- Section: Categorical Eligibility Requirements Type: POLICY ---------------------------------------------------------------------- Chapter: Living With Specified Relative Program: AFDC ---------------------------------------------------------------------- Subject: Absence of the Caretaker Relative from the Home ---------------------------------------------------------------------- 2515.25
A. Child Considered to be Living With The Caretaker Relative
 The child is considered to be living with the caretaker relative in situations in which the caretaker relative is absent from the home because:
 1. the caretaker relative is hospitalized and such confinement does not exceed ninety (90) consecutive days and during the period of confinement:
 a. the caretaker relative continues to exercise responsibility for the care of the child directly, or indirectly through a responsible person; or CT Page 2291
 b. the child is temporarily residing with another individual who is within the acceptable degree of relationship and who is assuming the duties of care and supervision of the child; or
 2. the caretaker relative is residing, for a period of ninety (90) consecutive days or less, in a shelter other than the usual family setting due to its loss from fire or flood and the needy child is living elsewhere, but:
 a. the caretaker relative continues to fulfill the responsibility of care and supervision of the child directly or indirectly through a responsible person; or
 b. the child is temporarily staying with another individual who is of acceptable degree of relationship and who is assuming the duties associated with the parental role.
B. Child Considered Not to be Living With The Caretaker Relative
 The child is considered not to be living with the caretaker relative in situations in which the caretaker relative's absence is due to:
1. incarceration in a penal or correctional institution; or
2. confinement in a public institution; or
 3. confinement in a hospital for chronic diseases including tuberculosis; or
4. confinement in a long term care facility or hospital when:
a. the length of stay is in excess of 90 days; or
 b. the caretaker relative is too sick or is otherwise incapable of exercising the responsibility for care and supervision of the child; and
 c. there is no relative of an acceptable degree of relationship able or willing to assume the responsibility of caring for the child.
CONNECTICUT DEPARTMENT OF INCOME MAINTENANCE UNIFORM POLICY MANUAL
Date: 7-1-87 Transmittal: UP-87-2 2515.30 ---------------------------------------------------------------------- Section: Categorical Eligibility Requirements Type: POLICY ---------------------------------------------------------------------- Chapter: Living With Specified Relative Program: AFDC CT Page 2292 ---------------------------------------------------------------------- Subject: Determination of Caretaker Relative ---------------------------------------------------------------------- 2515.30
 Regardless of which individual applies for assistance, when more than one individual resides in the home each of whom is within a specified degree of relationship to the child, the caretaker relative is that relative who is responsible for the day-to-day care and supervision of the child.
CONNECTICUT DEPARTMENT OF INCOME MAINTENANCE UNIFORM POLICY MANUAL
Date: 4-1-87 Transmittal: UP-87-1 2005.10 ---------------------------------------------------------------------- Section: Assistance Unit Composition Type: POLICY ---------------------------------------------------------------------- Chapter: AFDC Assistance Unit Requirements Program: AFDC ---------------------------------------------------------------------- Subject: Who Must Be Included ---------------------------------------------------------------------- 2005.10
 A. The assistance unit must include certain individuals who are in the home, if they meet the eligibility requirements for the program. The following individuals must be included in the assistance unit:
1. the dependent child for whom assistance is requested;
 2. all brothers and sisters of the dependent child who themselves qualify as dependent children, including adoptive siblings, adoptive siblings receiving maintenance payments under Title IV-E and half-siblings;
3. the natural or adoptive parent of the dependent child;
 4. the second parent of the dependent child who is eligible based on one parent's incapacity or unemployment.
 B. The individuals in A. above are considered as if they were in the home under certain circumstances. They must be included in the assistance unit as long as they continue to meet the AFDC eligibility requirement of living with a specified relative.
Included are the following:
 1. a child or parent in a general hospital who lived in the home prior to the hospital admission;
 2. a child who attends a special school away from home, such as for the deaf, blind, physically handicapped or emotionally disturbed if:
 a. the caretaker relative retains primary responsibility for the child; and
 b. the caretaker relative maintains a home for the child; and
 c. the child returns to the home for vacations and holidays;
 3. a child who returns home for a visit of at least 30 consecutive days from an institution which has primary responsibility for the care of the child. These institutions include, but are not limited to, state hospitals, training schools for the mentally retarded, juvenile correctional institutions and foster homes. The child is considered a member of the assistance unit for the entire length of the visit.
CT Page 2293